■ ROBERT CREECH, as Administrator of the Estate of MARY V. CREECH, Deceased, et al., Plaintiffs, v JENS KNITTER, Defendant. (Action No. 1.) ROBERT CREECH, as Administrator of the Estate of MARY V. CREECH, Deceased, et al., Respondents, v STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant. (Action No. 2.) — In two actions, the second of which was for a declaration that the defendant State Farm Mutual Automobile Insurance Company is obligated to defend or indemnify Jens Knitter in a wrongful death action arising out of an accident which occurred on April 21, 1979, State Farm appeals from so much of an order of the Supreme Court, Orange County (Hawkins, J.), dated September 21, 1981, as granted the plaintiffs' cross motion for summary judgment in the declaratory judgment action. Order reversed, insofar as appealed from, on the law, with $50 costs and disbursements, plaintiffs' cross motion for summary judgment is denied, summary judgment is granted to the appellant and it is declared that the appellant is not obligated to defend Jens Knitter in the wrongful death action brought against him by plaintiffs. On April 21, 1979, a 1974 Pontiac registered to one Janette Sparano, and driven by one Jens Knitter, was involved in a one-car accident. Mary Creech, who was a passenger in the vehicle, was killed in the crash. Sparano was insured by Aetna Casualty and Surety Company. Also, at the time of the accident, a policy issued by State Farm Mutual Automobile Insurance Company to Knitter's mother with whom he lived was in effect. That policy provided coverage for Jens Knitter in the event that he was driving a nonowned automobile. A nonowned automobile was defined as an automobile not (1) owned by, (2) registered in the name of, or (3) available for the regular use of the named insured, her spouse, or relative residing in the same household. On May 17, 1979 Knitter and his mother executed a nonwaiver of rights letter in which they authorized State Farm to investigate the accident and take any action it deemed expedient. Subsequently, on or about September 20, 1979, a wrongful death action was commenced against Jens Knitter. During the course of the investigation Jens Knitter and his mother represented that he did not own a car and was not permitted to use the family car;

his friends normally picked him up when he had to go out; about a year prior thereto he had owned a 1974 Pontiac for a few months but had sold the vehicle to Janette Sparano; he only used the car a couple of times after he sold it; it was kept at Sparano's residence; on no occasion did Knitter borrow the vehicle for more than 24 hours. However, during Jens Knitter's examination before trial in the wrongful death action, he testified that the car was garaged at his house, that it was paid for with his money and was his car and that he paid the insurance premiums. According to Knitter, the registration and insurance were in Sparano's name pursuant to some sort of an arrangement which he had with her. On December 11, 1980, after reviewing the transcript and further investigating the case, State Farm sent a disclaimer letter to Knitter. The grounds for the disclaimer were stated to be as follows: "1. Because you are not an 'insured' within the terms of the said policy. 2. Because you gave false statements to this company's representative concerning your use of the vehicle registered in the name of Jeanette [sic] Sparano which was involved in this accident, in violation of policy condition number 3 of the policy which requires your cooperation." On or about December 31, 1980 the plaintiffs commenced the instant action for a declaratory judgment seeking a determination of State Farm's obligation to provide excess coverage for Knitter in the wrongful death action. Subsequently, plaintiffs cross-moved for summary judgment in the declaratory judgment action. Special Term granted the cross motion, holding that, pursuant to subdivision 8 of section 167 of the Insurance Law, State Farm had waived its right to disclaim coverage because it had delayed approximately 19 months in disclaiming. We disagree. Recently, in *Zappone v Home Ins. Co.* (55 NY2d 131) the Court of Appeals had before it a factually similar situation wherein the insurer denied coverage on the basis that the vehicle in question was neither an owned nor a nonowned vehicle within the meaning of the policy. Although the insurer delayed in disclaiming, the Court of Appeals held that since the insurer had never contracted to cover the loss, coverage could not be created where there was none. Thus, Judge Meyer speaking for the majority, wrote (p 134): "The principle, declared in *Schiff Assoc. v Flack* (51 NY2d 692), that the failure to disclaim coverage does not create coverage which the policy was not written to provide, applies to liability policies as well as professional indemnity insurance, notwithstanding the provisions of subdivision 8 of section 167 of the Insurance Law. The words 'deny coverage' in that subdivision refer to denial of liability predicated upon an exclusion set forth in a policy which, without the exclusion, would provide coverage for the liability in question. It does not encompass denial that the policy as written could not have covered the liability in question under any circumstances. The order of the Appellate Division should, therefore, be affirmed". Similarly, since in the matter at bar, the policy which State Farm had with Knitter was never intended to provide coverage for another vehicle owned by someone else in the Knitter household, coverage may not be created pursuant to subdivision 8 of section 167 of the Insurance Law. Accordingly, the order must be reversed, insofar as appealed from, and summary judgment granted to State Farm. Mollen, P. J., Titone, Weinstein and Rubin, JJ., concur.